UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| C. CRAIG SAMTMANN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 12-0693 (ABJ) |
| UNITED STATES DEPARTMENT OF JUSTICE | ) | |
| Defendant. | ) | |

**AMENDED MEMORANDUM OPINION**

Plaintiff C. Craig Samtmann has brought this lawsuit against the United States Department of Justice ("DOJ"),[1] alleging violations of the Privacy Act, 5 U.S.C. § 552a (2010). He alleges that the Federal Bureau of Investigation ("FBI") maintained an inaccurate record in his file that led to an adverse employment decision, that it wrongfully disclosed that inaccurate record, and that it refused to correct mistakes in the record, and he seeks damages and injunctive relief. *See generally* Am. Compl. [Dkt. # 11]. Defendant filed a motion to dismiss or, in the alternative, for summary judgment, that plaintiff opposed. Since Counts I and II are barred by the applicable statute of limitations, and since plaintiff has failed to exhaust his administrative remedies with respect to Count III, the Court will grant defendant's motion.

---

1  The original complaint in this case named Robert S. Mueller, III, then-director of the FBI, as a defendant, but he was not named in the amended complaint and was therefore terminated from this case.

**BACKGROUND**

Plaintiff's employment with the Federal Bureau of Investigation ("FBI"), a component of DOJ, began on January 12, 1992. Am. Compl. ¶ 5. He started as a career service employee and eventually worked his way up to the position of "Supervisory Special Agent." *Id.* ¶¶ 5–6. In March 2003, plaintiff changed divisions and accepted an appointment with the FBI's Office of Law Enforcement Coordination under the supervision of Kathleen Timmons and Louis Quijas. *See* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss or, in the alt. for Summ. J. [Dkt. # 23] at 3 ("Pl.'s Opp."). Shortly thereafter, his supervisors began expressing concerns about plaintiff's attendance and his use of leave. Ex. A to Def.'s Mem. at 1–2 [Dkt. # 16-1]. This culminated in a meeting between plaintiff, Ms. Timmons, and Mr. Quijas on December 9, 2003. *See, e.g.*, Pl.'s Opp. at 4.

After the meeting, Ms. Timmons drafted a memorandum ("the Timmons Memo") memorializing her version of what took place. Mr. Quijas reviewed the memorandum and approved its contents; plaintiff was not given the opportunity to review it at that time. Ex. A to Def.'s Mem. The contents of the Timmons Memo are sealed, and they need not be set forth in this opinion because the legal rulings here do not depend upon the substance of the memorandum.

Following the December 9, 2003 meeting, plaintiff continued to work for the FBI until he voluntarily resigned on April 3, 2004. Am. Compl. ¶ 5. According to plaintiff, he elected to leave the FBI to pursue a business opportunity owning and operating a Rita's Water Ice franchise. Pl.'s Opp. at 3–4.

Subsequent to his resignation, on September 17, 2004, plaintiff submitted his first Freedom of Information Act ("FOIA")/Privacy Act request to the FBI. *See* Am. Compl. ¶ 17.

A letter from his attorney, John Berry, sought a complete copy of plaintiff's Official Personnel File ("Personnel File" or "OPF"). Ex. 1 to Hardy Decl. [Dkt. # 18]. The FBI responded on January 26, 2005, and released 399 pages of records to plaintiff. *See* Am. Compl. ¶ 17; Ex. 2 to Hardy Decl. [Dkt. # 18].

On March 21, 2006, plaintiff contacted the FBI for the first time to inquire about his possible reinstatement. Am. Compl. ¶ 23. After several conversations with FBI staff, plaintiff submitted a letter to Jody P. Weis of the Philadelphia Field Office, officially requesting consideration for reinstatement. *Id.* ¶¶ 23–24. Mr. Weis interviewed plaintiff on August 21, 2006, but the FBI ultimately declined to reinstate him. *Id.* ¶¶ 26, 33. On March 12, 2007, Eddie A. Winkley – the Acting Unit Chief of the Personnel Assessment Services Unit – sent a letter notifying plaintiff of the decision and explaining that it was "based on information developed during the [FBI's] preliminary background investigation." *Id.* ¶ 33; Ex. E to Def.'s Mem. [Dkt. # 16-1]. On March 24, 2007, plaintiff informally requested an explanation as to why his request for reinstatement was denied. Am. Compl. ¶ 39 (noting that Samtmann asked the FBI to provide "a detailed explanation of [the] decision because I do not understand the FBI's position. What was said about me and who said it? What is the process for my appeal?").

About one year later, on March 14, 2008, plaintiff submitted another FOIA/Privacy Act request, seeking "the last one hundred (100) pages of my personnel file." Ex. B to Def.'s Mem. [Dkt. # 16-1]. Plaintiff added a handwritten note to the form, stating that he was in the process of returning to the FBI and asserting that "[m]y last supervisor placed misleading derogatory information in my file during this process." *Id.* Plaintiff also added a handwritten request for "the identity of any person or organization that requested information from my file." *Id.* The FBI responded on May 21, 2008, and released those pages, noting that "[t]he records that you

[plaintiff] have requested were previously processed under the provisions of the Freedom of Information Act for another requester authorized by you." Ex. 4 to Hardy Decl. [Dkt. # 18].

Plaintiff then filed another FOIA/Privacy Act request on October 26, 2009. *See* Ex. 5 to Hardy Decl. [Dkt. # 18]. In this request, plaintiff specifically asked for:

> 1. All records relating to the Special Agent Reinstatement Interview of C. Craig Samtmann on August 21, 2006 by Federal Bureau of Investigation (FBI), Philadelphia Division, retired Special Agent in Charge Jody P. Weis and retired Applicant Coordinator/Special Agent Jeffrey L. Covington. Moreover, all communications subsequent to the interview relating to C. Craig Samtmann including those with former Assistant Director Louis J. Quijas, Office of Law Enforcement Coordination, and/or retired Unit Chief Kathleen D. Timmons.
>
> 2. All records relating to the decision made to deny reinstatement to C. Craig Samtmann as related to the letter from Assistant Director Anthony M. Bladen, Human Resources Division, to C. Craig Samtmann, dated June 5, 2009.
>
> 3. All records relating to any statement made by Mr. Quijas and/or Ms. Timmons relating to C. Craig Samtmann from January 1, 2008 to present.

*Id.* The FBI responded to this FOIA/Privacy Act request on April 26, 2010, and released thirty-two additional pages of records to plaintiff. Ex. 6 to Hardy Decl. [Dkt. # 18].

This set of records included a copy of the Timmons Memo. Am. Compl. ¶¶ 35, 44. Additionally, the FBI also released an internal version of the March 12, 2007 denial of reinstatement letter sent by Mr. Winkley, which differed from the one originally received by plaintiff. *See* Pl.'s Opp. at 6. The internal version of the letter contained a "Note" below Mr. Winkley's signature that referenced the Timmons Memo and its contents and attributed the denial of reinstatement to those circumstances. Ex. E. to Def.'s Mem. [Dkt. # 16-1]. The FBI explained that the thirty-two pages of documents had been stored in plaintiff's Security "Sub-S" Folder, not his personnel file, and it explained that since plaintiff's prior FOIA/Privacy Act

requests had only asked for the personnel file, the requests had not triggered a search of other files. *See* Pl.'s Opp. at 22 n.4; Hardy Decl., Ex. 4 to Def.'s Mem. ¶¶ 20–21, 25–26 [Dkt. # 16-4].

On April 27, 2012, plaintiff filed a one count Privacy Act complaint under section 552a(g)(1)(C), alleging that a failure to maintain accurate records resulted in a denial of his reinstatement request. *See generally* Compl. [Dkt. # 1]. Plaintiff then amended the complaint on January 25, 2013, adding two counts. In Count I, plaintiff asserts that he suffered "damages from adverse determination" in violation of section 552a(g)(1)(C) of the Privacy Act due to the FBI's use of the Timmons Memo, an allegedly false record, in denying him reinstatement in 2007. Am. Compl. ¶¶ 48–70. In Count II, plaintiff states that defendant wrongfully disclosed the Timmons Memo to personnel involved with the reinstatement decision process in violation of section 552a(g)(1)(D) of the Privacy Act. *Id.* ¶¶ 71–78. And in Count III, plaintiff claims that defendant has refused to correct allegedly inaccurate records in violation of its duty under section 552a(g)(1)(A) of the Privacy Act. *Id.* ¶¶ 79–82.

On March 15, 2013, defendant filed a motion to dismiss or, in the alternative, for summary judgment, Def.'s Mot. to Dismiss or, in the alt., for Summ. J. [Dkt. # 15]; Mem. of Points & Authorities in Supp. of Def.'s Mot. to Dismiss or for Summ. J. ("Def.'s Mem.") [Dkt. # 15-1], that plaintiff opposed. *See generally* Pl.'s Opp.

## STANDARD OF REVIEW

I. **Statute of Limitations**

In this circuit, a motion to dismiss a claim as time-barred is generally reviewed under the standard set by Federal Rule of Civil Procedure 12(b)(6). *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). But where resolution of the issue requires the court to refer to "matters outside the pleadings . . . , the motion must be treated as one for

summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Here, both parties cite to material outside of the pleadings. Although the materials cited by defendant are referenced in the complaint and therefore could be considered under the Rule 12(b)(6) standard,[2] plaintiff's additional materials are not.[3] Therefore, the Court will treat this motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 56, and it will consider all of the materials both parties have put before it.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the

---

2   Throughout the amended complaint, plaintiff refers to his FOIA/Privacy Act requests, and he describes interactions he had with the FBI as both an employee and as an applicant for reinstatement. *See, e.g.*, Am. Compl. ¶¶ 17, 22, 24, 26, 33, 35, 38, 40, 42. Because plaintiff does not contest the authenticity of the materials submitted by defendant and the amended complaint incorporated them by reference, "'the subject matter to which [the amended complaint] refers bec[ame] a part of the incorporating document just as if it were set out in full.'" *United States v. Sci. Applications Int'l Corp.*, 502 F. Supp. 2d 75, 78 (D.D.C. 2007), quoting *Air Line Pilots Ass'n v. Delta Air Lines*, 863 F.2d 87, 94 (D.C. Cir. 1988).

3   Plaintiff has provided the Court with two declarations discussing matters that were not incorporated by reference in the amended complaint. The Court would not be permitted to consider that material under the Rule 12(b)(6) standard.

non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## II. Failure to Exhaust Administrative Remedies

Failure to exhaust administrative remedies is properly raised in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. *Kramer v. United States*, 460 F. Supp. 2d 108, 110 (D.D.C. 2006). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

7

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## ANALYSIS

In its motion for summary judgment, defendant advances four arguments in support of its contention that plaintiff's case should be dismissed. First, it argues that Counts I and II were filed after the applicable statute of limitations and are therefore time-barred. Def.'s Mem. at 8–11. Second, defendant asserts that plaintiff fails to state a claim for adverse determination in Count I because he has not set forth sufficient facts to show that: (1) the FBI failed to maintain plaintiff's records with the degree of accuracy necessary to assure fairness in the determination; (2) the FBI's reliance on the inaccurate records proximately caused the adverse determination; or (3) the FBI acted intentionally or willfully in failing to maintain plaintiff's records. *Id.* at 11. Third, defendant argues that plaintiff's claim in Count II for wrongful disclosure must fail as a matter of law because any disclosure was undertaken pursuant to an applicable exception or exemption to the Privacy Act. *Id.* at 18–22. Finally, defendant contends that plaintiff's claim in Count III for failure to correct records is premature because plaintiff has failed to exhaust his administrative remedies. *See Id.* at 23. For the reasons stated below, the Court will grant defendant's motion for summary judgment as to Counts I and II because they are barred under the Privacy Act's statute of limitations, and it will grant defendant's motion to dismiss Count III because plaintiff failed to exhaust his administrative remedies. Given those rulings, the Court need not reach the other issues presented.

**I. Counts I and II of the amended complaint are time-barred.**

As a general rule, section (g)(5) of the Privacy Act provides that "[a]n action to enforce any liability . . . may be brought . . . within two years from the date on which the cause of action arises." 5 U.S.C. § 552a(g)(5) (2010). A cause of action arises under the Privacy Act "at the time that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the error; and (3) the plaintiff either knew or had reason to know of the error." *Conklin v. U.S. Bureau of Prisons*, 514 F. Supp. 2d 1, 4 (D.D.C. 2007), quoting *Szymanski v. U.S. Parole Comm'n*, 870 F. Supp. 377, 378 (D.D.C. 1994) (internal quotation marks omitted); *see also Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987). In an adverse determination case, the cause of action accrues only once; it "does not arise each time an adverse determination is made based on allegedly erroneous records." *Allmon v. Fed. Bureau of Prisons*, 605 F. Supp. 2d 1, 4 (D.D.C. 2009), citing *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 1984); *see also Szymanski*, 870 F. Supp. at 378 n.4.

The only exception to the rule arises if an agency "materially and willfully misrepresented any information." 5 U.S.C. § 552a(g)(5). In that case, "the action may be brought at any time within two years after discovery by the individual of the misrepresentation." *Id.* Here, the Court finds that the causes of action set out in Counts I and II accrued over four years before plaintiff filed this case and that the tolling provision does not apply. As a result, both Count I and Count II will be dismissed as time-barred.

Count I asserts that the FBI violated the Privacy Act by maintaining a false record about plaintiff that was ultimately used to make an adverse employment decision: the May 2007 denial of the request for reinstatement. According to the complaint, an error was allegedly made when the Timmons Memo was generated in 2003, and plaintiff was harmed by it in May of 2007. The

9

cause of action therefore accrued and the statute of limitations began to run when plaintiff knew or should have known about the false record.

Although plaintiff argues that he had no knowledge of the Timmons Memo until it was produced in 2010, the record shows that he had or should have had the requisite knowledge long before that. Plaintiff filed his first FOIA/Privacy Act request for his personnel records on September 17, 2004, *see* Ex. 1 to Hardy Decl., and he submitted the second one on March 14, 2008. Plaintiff added a handwritten note to that request form that stated: "My last supervisor placed misleading derogatory information in my file during [the reinstatement] process." Ex. B to Def.'s Mem. Thus, as early as 2008 and more than four years before he filed his original complaint, plaintiff revealed that he was aware that the FBI was maintaining a document that he believed to be erroneous.

Plaintiff also maintains that he was misled by the fact that the memorandum was not produced in response to the 2008 request. But his statements in his declaration demonstrate that he had or should have had knowledge of the existence of the allegedly false records in 2008, even after the May 2008 production. In describing his reaction to the 2008 FOIA production, plaintiff said: "Defendant, once again, returned a 'clean' file containing copies of what it had produced in 2004 and *omitting* any derogatory record and any indication that there was a derogatory record." Second Samtmann Decl. ¶ 23. Attached to Pl.'s Opp. ("Second Samtmann Decl.") [Dkt. # 24] (emphasis added). He then went on to say: "In my mind, [the government's response] confirmed that there was no record defendant *was willing* to produce." *Id.* (emphasis added). Thus, even viewing the facts in the light most favorable to plaintiff, the Court finds that the adverse discrimination claim, Count I, accrued in 2008 and should have been filed by 2010.

For the same reasons, Count II is also time-barred. Count II asserts that the FBI violated the Privacy Act by wrongfully disclosing plaintiff's records. That cause of action accrued when plaintiff had or should have had knowledge that the wrongful disclosure had taken place. *Hill v. Dep't of Defense*, -- F. Supp. 2d -- , No. 11-378, 2013 WL 5872035, at *4 (D.D.C. July 19, 2013), citing *Farrero v. NASA*, 180 F. Supp. 2d 92, 93–97 (D.D.C. 2001). Here, the record once again shows that plaintiff had or should have had that knowledge more than two years before he filed this case.

On March 12, 2007, plaintiff received a denial of reinstatement letter, which stated that "information developed during the preliminary background investigation" formed the basis of the denial decision. Ex. E to Def.'s Mem. Plaintiff responded on March 24, 2007, asking, in his own words, for a "detailed explanation:" "What was said about me and who said it?" Am. Compl. ¶ 39. A year later, plaintiff submitted the annotated March 14, 2008 FOIA/Privacy Act request, which claimed that misleading information had been placed in the file and included a handwritten a request for "the identity of any person or organization that requested information from my file." Ex. B to Def.'s Mem. Thus, it appears from plaintiff's own statements in 2008 that he understood that a disclosure had been made that affected his reinstatement.

Moreover, plaintiff's 2009 FOIA/Privacy Act request demonstrates that he believed a wrongful disclosure had taken place in 2007. In that request, plaintiff once again asked for "all communications subsequent to the interview relating to C. Craig Samtmann including those with former Assistant Director Louis J. Quijas, Office of Law Enforcement Coordination, and/or retired United Chief Kathleen D. Timmons" and for "[a]ll records relating to any statement made by Mr. Quijas and/or Ms. Timmons." Ex. 5 to Hardy Decl.; *accord* Hardy Decl. ¶ 9. Put simply, plaintiff continued to look for evidence to confirm his belief that his former supervisors had

11

wrongfully disclosed information that led to the denial of his reinstatement request. As a result, Count II accrued well before 2010, and it is time-barred.

Plaintiff argues that even if he had knowledge as late as 2009 of the alleged violations underlying his two claims, Count I and Count II should not be dismissed because plaintiff was misled by defendant's failure to turn over the Timmons Memo and the internal denial of reinstatement letter in response to the March 14, 2008 FOIA/Privacy Act request, and the statute of limitations should therefore be equitably tolled. Pl.'s Opp. at 21–23. He also asserts that the cause of action did not accrue because Mr. Winkley wilfully withheld the internal version of plaintiff's denial letter that referenced the Timmons Memo when plaintiff asked for further explanation of the denial of his reinstatement in 2007. While the agency was hardly forthcoming, these facts do not alter the Court's conclusion.

In order for equitable tolling to apply, the facts must show that "'despite all due diligence," plaintiff was "unable to obtain vital information bearing on the *existence* of his claim." *Ciralsky v. CIA*, 689 F. Supp. 2d 141, 153 (D.D.C. 2010) (emphasis added), quoting *Chung v. DOJ*, 333 F.3d 273, 278 (D.C. Cir. 2003). Here, those circumstances are not present. Plaintiff focuses much of his argument on the time it took to physically receive the documents that confirmed his prior beliefs. *See e.g.*, Pl.'s Opp. at 22 ("Plaintiff was misled by defendant's failure to produce the documents when he asked for them."). But the critical inquiry when applying the limitations provisions of the Privacy Act is when plaintiff had or should have had knowledge of a document's existence or disclosure, not when he obtained definitive proof. *See Farrero*, 180 F. Supp. 2d at 95, citing *Tijerina*, 821 F.2d at 798 (emphasis added) ("[T]he statute of limitations does not require *actual* knowledge of the alleged violation."). Here, the FBI did not prevent plaintiff from becoming aware of a possible Privacy Act violation or claim: plaintiff

repeatedly availed himself of the FOIA/Privacy Act process and wrote in his own hand on March 14, 2008, that he knew some record existed. And his second declaration demonstrates that his suspicion persisted even after the 2008 FOIA production. Accordingly, equitable tolling is not appropriate in this case.

Similarly, the fact that the FBI withheld an internal version of the reinstatement denial letter when plaintiff asked for more information on March 24, 2007, does not justify tolling of the statute of limitations. Plaintiff's Privacy Act claims relate to the Timmons Memo, not the Winkley letter, so knowledge that two different versions of the letter existed has no bearing on when the claims accrued. Moreover, it is not clear that the FBI was under any legal obligation to provide the document when plaintiff asked for more information about the employment decision, but even if it was, a failure to transmit the document in 2007 did not hinder plaintiff's ability to lodge the claims that accrued later, in 2008. As a result, the Court finds that plaintiff's adverse determination and wrongful disclosure claims are time-barred.

## II. Count III is premature because plaintiff has failed to exhaust his administrative remedies.

Plaintiff alleges in Count III of the amended complaint that the FBI failed to correct his records under section 552a(g)(1)(A) of the Privacy Act. Am. Compl. ¶ 79–82. He seeks injunctive relief in the form of an order that the FBI remove the Timmons Memo and related materials from his files. *Id.* at 12.

In arguing for dismissal of Count III, defendant states that plaintiff has failed to exhaust the administrative remedies under the Privacy Act and that exhaustion is a prerequisite to filing a claim in federal court. *See* Def.'s Mem. at 23. Plaintiff has admitted that he had not filed a request to amend his records at the time he filed the complaint. *See* Pl.'s Opp. at 34 ("Defendant correctly notes that, at the time this action was filed, plaintiff had not asked it to expunge the

Timmons Memo from its system of records because of its false premise and false factual recitations."). But he states that he did submit a request for correction on January 25, 2013, which defendant subsequently denied on April 4, 2013. As a result, plaintiff claims that his failure to amend claim is now ripe. *Id.* at 34–35. It is not.

In order to bring a suit to amend records under the Privacy Act, a plaintiff "must exhaust his or her administrative remedies." *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (per curiam). The administrative procedures that must be exhausted under the Privacy Act are set out in 5 U.S.C. § 552a(d)(2)–(3). First, the agency must "permit the individual to request amendment of a record pertaining to him," and it must promptly either correct the record or "inform the individual of its refusal to amend the record . . . , the reason for the refusal," and the procedures for appealing that decision, which are established in section 552a(d)(3). 5 U.S.C. § 552a(d)(2). Second, the agency must "permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal" and complete that second round of administrative review within thirty days of that request. *Id.* § 552a(d)(3). And third, if the request to amend is once again denied, the reviewing agency official is to "permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section." *Id.* Judicial review is not available until the plaintiff has come to the end of both of the procedures set forth in subsections 552a(d)(2) and 552a(d)(3). *Id.* § 552a(g)(1)(A).

Here, the step set forth in section 552a(d)(2) is now complete: plaintiff filed a request to amend on January 25, 2013, and that request was denied on April 4, 2013. Ex. AA to Def.'s Reply [Dkt. # 26-1]. But plaintiff provides no indication that he has completed the procedures

set forth in section 552a(d)(3) by seeking administrative review of the initial agency decision to not amend his records. As a result, plaintiff has not satisfied the requirement that he first exhaust his administrative remedies, and any action by this Court would be premature. 5 U.S.C. § 552a(g)(1)(A); *see also Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485, 1488 (D.C. Cir. 1983). The Court will therefore dismiss Count III for failure to exhaust administrative remedies.

## CONCLUSION

Because plaintiff possessed the requisite knowledge needed to file a claim for Privacy Act violations in 2008 but did not do so until 2012, Counts I and II of the amended complaint are time-barred under the Privacy Act's two-year statute of limitations. Similarly, because plaintiff filed a claim for failure to correct records prior to exhausting his administrative remedies, Count III is premature. The Court will therefore grant defendant's motion for summary judgment with respect to plaintiff's claims for adverse determination (Count I) and wrongful disclosure (Count II), and it will grant defendant's motion to dismiss plaintiff's failure to amend claim (Count III). A separate order will issue.

_____
AMY BERMAN JACKSON
United States District Judge

DATE: April 7, 2014